# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>FUSION HOTEL MANAGEMENT LLC, et al.,<br>　　　　　　　Defendants. | Case No.  3:21-cv-02085-L-MSB<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[ECF No. 12] |

In this enforcement action filed by the United States Securities and Exchange Commission ("SEC" or "Commission"), Defendants Fusion Hotel Management LLC ("FHM"), Fusion Hospitality Corporation ("FHC," FHM and FHC collectively, "Fusion"), and Denny T. Bhakta ("Bhakta") filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 12.)  The Court decides the matter on the papers submitted and without oral argument.  *See* Civ. L. R. 7.1(d.1).  For the reasons stated below, Defendants' motion is denied.

**I.　Background**

According to the Complaint (ECF no. 1, "Compl."), Bhakta is a former employee of an international hotel chain in San Diego.  After his hotel employment ended, he formed the Fusion entities.

1

Bhakta raised over $15 million from more than 40 investors by selling "Capital Notes" issued by FHM and/or FHC, and "Stock Certificates" issued by FHC. To accomplish this, he told prospective investors that Fusion was in the business of acquiring blocks of hotel room reservations at wholesale and selling them to Fusion's corporate clients at a profit. More specifically, Bhakta represented that Fusion had a successful track record in this line of business, that investors' investments were pooled to acquire blocks of reservations from a major hotel chain, that Fusion used its relationships with hotel chains and airlines to generate high returns for Fusion investors by selling blocks of reservations to the airlines, and that investors' investments were secured by surety bonds and insurance.

The principal amounts for the Capital Notes ranged from approximately $35,000 to $750,000 each and provided for a specific rate of return, either as a flat amount or an interest rate typically between 15% and 44% per year. Fusion's investors purchased the Capital Notes for investment purposes. The Stock Certificates represented "shares of common stock" in FHC.

In reality, Fusion had no business relationships or clients to purchase or sell blocks of hotel room reservations, did not buy, or sell, any hotel room reservations, and had no insurance to secure the investments. Instead, Bhakta used substantial amounts of investor funds for personal expenses, including millions of dollars lost to gambling, and payments to earlier investors in the manner of a Ponzi scheme. Eventually the scheme failed, leaving the investors with substantial losses.

Bhakta had complete managerial and day-to-day control over Fusion and had exclusive control of Fusion bank accounts. Bhakta never registered with the SEC or associated with a registered entity. The Fusion entities' securities offerings were not registered with the SEC.

Based on the foregoing, the SEC filed the instant action alleging violations of Section 17(a) of the Securities Act of 1933 (the "1933 Act"), Section 10(b) of the Securities and Exchange Act of 1934 (the "1934 Act"), and Rule 10b-5 promulgated

thereunder. The SEC seeks injunctive relief barring Defendants from further violations, disgorgement of funds from illegal conduct, and civil penalties. The Court has federal question jurisdiction under 28 U.S.C. § 1331.

In their motion to dismiss Defendants contend that the Complaint lacks the requisite specificity and clarity. For the reasons which follow, the motion is denied.

## II.   Discussion

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[1] Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Defendants rely on the latter approach.

Generally, to plead essential facts a plaintiff must allege only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's allegations must provide "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555. However, "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud ... ." Fed. R. Civ. Proc. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However,

---

[1]   Internal citations and quotation marks are omitted from citations.

legal conclusions need not be taken as true merely because they are couched as factual allegations. *Bell Atl. Corp.*, 550 U.S. at 555. Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Defendants generally contend that the complaint is vague and confusing. (*See* Mot. at 9, 11-13.) They argue that the SEC fails to (1) allege the damages, causation, and justifiable reliance elements of the claims; (2) "provide[] notice to Defendants of the amount and extent of damages ... suffered by each investor or ... each specific group of investors;" (3) allege the "who, what, when, where and how elements required by Rule 9's heightened pleading standard"; and (4) provide "specific facts as to what, when, where, and how false representations were made to each specific investor, or at least to each specific group of investors to whom same sets of facts apply," for example, investors who invested into Capital Notes as opposed to Stock Certificates. (Mot. at 6.) Defendants also maintain that the SEC is required to identify the investors, "specify each statement ... alleged to have been false or misleading ...," and specify the exact "means of the internet" used to transmit each allegedly misleading statement to the investors.[2] (Mot. at 10.)

Section 10(b) of the 1934 Act provides that

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— [¶]

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative

---

[2] In their reply Defendants change tack to argue that the SEC did not sufficiently allege that the representations were made "by means of interstate commerce." (ECF No. 15, "Reply" at 3.) This is a new argument not raised in the motion. It is inappropriate to raise new arguments in the reply because it deprives the opposing party of opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

4

or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

28 U.S.C. § 78j(b). Rule 10b-5, which implements Section 10(b), further provides that it is unlawful

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Finally, Section 17(a) of the 1933 Act:

(a) Use of interstate commerce for purpose of fraud or deceit

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

5

"[D]issemination of false or misleading information with intent to defraud" in connection with the offer or sale of a security falls within the prohibitions of Section 10(b), Rule 10b-5, and Section 17(a). *See Lorenzo v. SEC,* 139 S.Ct. 1094, 1100 (2019). However, the elements and limitations to allege these claims differ between private securities fraud actions and SEC enforcement actions. *Gebhart v. SEC,* 595 F.3d 1034, 1040 n.8 (9th Cir. 2010). "Congress provided the Commission with express statutory authority to administer and enforce the 1933 and 1934 Acts." *SEC v. Rind*, 991 F.2d 1486, 1488 (9th Cir. 1993); *see also SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1363 (9th Cir. 1993) ("creature of statute"); *see also id.* at 1490 ("the Commission's enforcement powers are a product of congressional design and not judicial imagination."). On the other hand, a private right of action for damages pursuant to Section 10(b) was judicially created. *Rana Research,* 8 F.3d at 1363; *Rind*, 991 F.2d at 1489. No private right of action, only SEC enforcement, is available under Section 17(a). *In re Wash. Public Power Supply Sys. Securities Litig.*, 833 F.3d 1349 (9th Cir. 1987).

The distinction between statutory SEC enforcement actions and judicially created private actions is "fundamental" in that judicially created requirements for private action claims generally do not apply to SEC enforcement actions. *See Rana Research,* 8 F.3d at 1363-64. The judicially created elements and limitations for private actions "are largely directed toward identifying who has standing ... ." *Rana Research,* 8 F.3d at 1364. "But where the SEC is concerned, the matter is settled; Congress designated the SEC as the primary enforcement agency for the securities laws." *Id.*

For purposes of an SEC enforcement action under Section 17(a) of the 1933 Act, Section 10(b) of the 1934 Act, and Rule 10b-5, the SEC must plead and prove that Defendants (1) made a material misstatement or omission (2) in connection with the offer or sale of a security (3) by means of interstate commerce. *S.E.C. v. Phan,* 500 F.3d 895, 907-08 (9th Cir. 2007); *see also Gebhart,* 595 F.3d at 1040 n.8.

"Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require scienter. Violations of Sections 17(a)(2) and (3) require a showing of negligence." *Phan*, 500 F.3d at 908 (emphasis and ellipsis omitted).)

Unlike private plaintiffs, the SEC need not show (1) transaction and loss causation, or (2) economic loss. *Gebhart,* 595 F.3d at 1040 n.8. The SEC also need not plead and prove reliance. *Lorenzo,* 139 S.Ct. at 1104; *see also Rana Research,* 8 F.3d at 1363-64. Finally, the SEC need not specifically identify any defrauded investors. *Rind*, 991 F.2d at 1490. To the extent Defendants seek dismissal arguing that the SEC failed to adequately allege reliance, causation, or damages, or that it failed to specifically identify any defrauded investors, their motion is denied.

The Court next turns to Defendants' contention that the complaint is not pled with the requisite specificity. Defendants first argue that the complaint fails to meet the heightened pleading requirements under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 *et seq.* ("PSLRA"). By its express terms, the PSLRA applies to *private* securities fraud actions. *See* 15 U.S.C. § 78u-4(b) ("In any *private* action arising under this chapter ...") (emphasis added); *see also S.E.C. v. Small Cap Research Group, Inc.,* 226 Fed. Appx. 656, 657 (9th Cir. 2007). To the extent Defendants argue that the SEC's complaint does not meet the heightened pleading requirements imposed by the PSLRA, their motion is denied.

In the absence of the PSLRA, the only heightened pleading requirements are imposed by Rule 9(b). *Small Cap Research Group,* 226 Fed. Appx. at 657. Rule 9(b) provides

> **Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. Proc. 9(b).

/ / / / /

7

"This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States ex rel. Swoben v. United HealthCare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). However, it "does not require absolute particularity or a recital of the evidence." *Id.* "[A] complaint need not allege a precise time frame, describe in detail a single specific transaction, or identify the precise method used to carry out the fraud." *Id.*

The Complaint meets the standard imposed by Rule 9(b) as it goes beyond "mere conclusory allegations of fraud" or "[b]road allegations [without] particularized supporting detail." *United HealthCare,* 848 F.3d at 1180-82. It identifies the maker of the allegedly misleading statements as Bhakta. It describes the statements Bhakta made to investors, the context in which they were made, and explains why they were false. It identifies a time frame when the statements were made as "at least January 2016 until at least February 2020" (Compl. ¶ 2) and provides specific examples in 2017, 2018, and 2019 (*see, e.g., id.* ¶¶ 43-71). It further alleges that Bhakta conducted his operations from San Diego through in-person meetings, telephone calls, and communications via internet. (*See, passim, id.* ¶¶ 43-71.)

The Complaint satisfies the "two principal purposes" of Rule 9(b). *See United HealthCare,* 848 F.3d at 1180. First, the allegations are "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *See id.* Second, the Complaint identifies specific wrongdoing and is therefore not merely "a pretext for the discovery of unknown wrongs." *See id.*

Accordingly, the Complaint states with sufficient particularity the circumstances constituting fraud. To the extent Defendants' motion is based on the heightened pleading requirement under Rule 9(b), it is denied.

/ / / / /

## III. Conclusion

Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: November 10, 2022

_____
Hon. M. James Lorenz
United States District Judge