RANDY S. GROSSMAN
United States Attorney
ERIC R. OLAH
California Bar No. 295513
Assistant United States Attorney
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.: 619-546-7540

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FUSION HOTEL MANAGEMENT LLC, FUSION HOSPITALITY CORPORATION, DENNY T. BHAKTA,<br><br>Defendants. | Case No. 21-CV-2085-L-MSB<br><br>**UNITED STATES' MOTIONS TO:**<br><br>**(1) INTERVENE; AND**<br>**(2) STAY PROCEEDINGS**<br><br>Date: April 17, 2023*<br>Time: 10:30 a.m.<br>Courtroom: 5B<br><br>*Pursuant to the Local Rules, there will be no oral argument unless requested by the Court.<br><br>**The Honorable M. James Lorenz** |

The United States, through its counsel, Randy S. Grossman, United States Attorney, and Eric R. Olah, Assistant United States Attorney, hereby moves to intervene in and to stay the proceedings in this civil case (the "SEC Case") pending resolution of the parallel criminal case docketed at *United States v. Denny Bhakta*, No. 21-CR-3352-JLS (the "Criminal Case").

Plaintiff Securities and Exchange Commission takes no position on the United States' motions. Counsel for Defendant Denny Bhakta ("Bhakta") in the Criminal Case has advised that she will join these motions.

//

## I. INTRODUCTION

The Court should stay the SEC Case pending the outcome of the Criminal Case because of the substantial factual and legal overlap of these cases. The SEC's complaint here and the indictment in the Criminal Case both contain allegations regarding Bhakta's securities fraud scheme, and misstatements and omissions, about his companies Fusion Hotel Management LLC and Fusion Hospitality Corporation (collectively, "the entities"). The complaint and indictment both allege Bhakta made a series of misrepresentations to investors of the entities, false statements that Bhakta backed with fabricated documents. And the complaint and indictment both allege that Bhakta used investor money to pay for personal expenses, including his gambling losses, and to make payments to other investors. The allegations are based on much of the same evidence and witnesses, and the SEC's causes of actions raise the same or very similar legal questions as the charges in the Criminal Case.

First, proceeding with the SEC Case would force Defendants (Bhakta, specifically) to choose between setting aside Fifth Amendment rights, on the one hand, or invoking those rights but then suffering the adverse evidentiary inference such silence often carries in civil litigation. Second, discovery in the SEC Case would likely turn into an unfair, one-sided affair if Bhakta invokes his Fifth Amendment rights; Defendants could take affirmative civil discovery but stand silent when the SEC sought answers about Bhakta's fraudulent conduct in connection with Fusion Hotel Management LLC and Fusion Hospitality Corporation. Third, without a stay, Defendants could avoid the limitations on criminal discovery by using the SEC Case to pursue wide-ranging discovery through depositions, interrogatories, and third-party subpoenas. Fourth, the SEC Case and Criminal Case overlap significantly in terms of charged conduct, defendants, witnesses, and evidence, and so the cases therefore cannot realistically proceed independent of one another. Finally, staying the SEC Case (which seeks injunctions and financial relief) and allowing the Criminal Case (in which liberty interests are at stake) to proceed will therefore save the Court, and the parties, significant resources, while allowing for a full vetting of

the allegations against Defendants.

## II.   STATEMENT OF FACTS

### A.   The SEC Case

The SEC's complaint alleges that Bhakta made a series of materially false representations to investors to induce their investments in Fusion Hotel Management, LLC and Fusion Hospitality Corporation, two entities he founded and controlled. *See* ECF No. 1 at ¶¶ 1, 42. The complaint describes how Bhakta told investors that the entities were in the business of acquiring—and that investor funds would be used to buy—blocks of hotel room reservations from major hotel chains at wholesale rates and selling those rooms at a profit to corporate clients, including a major airline. *Id.* at ¶¶ 2, 38. In several instances, Bhakta sent investors supposed contracts with hotel room suppliers and customers concerning the purchase and sale of room blocks, and provided investors with purported bank statements that appeared to reflect legitimate business activity. *Id.* at ¶ 2.

The complaint further alleges that, in reality, the purported business was a sham: the entities did not buy and sell blocks of hotel rooms for profit; the entities did not have insurance or surety bonds to secure investments; the entities did not have the claimed agreements with corporate clients and did not acquire hotel room blocks or pre-sell rooms as represented to investors; the contracts and bank statements that Bhakta sent to investors were fabricated; and Bhakta used substantial amounts of investors funds for Ponzi payments to other investors and for his personal expenses, including millions of dollars gambled and lost at casinos. *Id.* at ¶ 3. The complaint details many of Bhakta's misrepresentations (*id.* at ¶¶ 20-85) and his misuse of investor funds (*id.* at ¶¶ 86-95).

The SEC's complaint thus alleges two claims for relief: (1) fraud in connection with the purchase or sale of securities, in violation of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder; and (2) fraud in the offer or sale of securities, in violation of Section 17(a) of the Securities Act of 1933. *Id.* at ¶¶ 97-104. The SEC seeks injunctive relief, professional bars, disgorgement, and civil penalties against Defendants. *Id.* at 15-16 (Prayer for Relief).

### B. The Criminal Case

A federal grand jury in this District returned an indictment against Bhakta on December 1, 2021 that substantially overlaps with the SEC Case.

The indictment in *United States v. Denny Bhakta*, No. 21-CR-3352-JLS, alleges that Bhakta made material misstatements and omissions about Fusion Hotel Management LLC and Fusion Hospitality Corporation when soliciting individuals to invest in those entities. *See* Criminal Case, ECF No. 1 at ¶¶ 1-2. Specifically, Bhakta claimed to investors that the entities had purchased large blocks of hotel rooms for multiple nights from a multinational hospitality company and then sold them at a profit to a major American airline. *Id.* at ¶ 3. Bhakta provided investors with documents containing false statements about the entities' annual revenue, number of employees, and business activities. *Id.* at ¶ 4. Notably, the fabricated documents include (1) bank records purporting to show payments for the hotel rooms and payments from the airline; (2) purported agreements between the entities and the hotel company; (3) purported agreements between the entities an the airline; and (4) documents purporting to be internal analyses conducted by the hotel company. *Id.* at ¶ 5. Bhakta received funds from investors, which he falsely claimed the entities would use to purchase large blocks of hotel rooms from the hotel company—but Bhakta instead used investor money to pay for personal expenses, including to cover gambling losses, and to make payments to other investors. *Id.* at ¶ 6. The indictment further alleges that Bhakta issued promissory notes and shares of stock, each a security under federal securities laws, to investors who provided funds to Bhakta and the entities. *Id.* at ¶ 7.

The indictment charges Bhakta with one count of securities fraud, in violation of 15 U.S.C. §§ 78j, 78ff, and 17 C.F.R. § 140.10b-5; one count of money laundering, in violation of 18 U.S.C. § 1957; and criminal forfeiture allegations. *Id.* ¶¶ 8-15.

### III. ARGUMENT

### A. Intervention is Appropriate Under Rule 24 of the Federal Rules of Civil

**Procedure**

1. **Legal Standard**

Under Federal Rule of Civil Procedure 24(a)(2), anyone may intervene in a case as of right in an action when the applicant "claims an interest relating to the . . . transaction which is the subject of the action" and "disposing of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless existing parties adequately protect that interest." Intervention as of right under Rule 24(a)(2) is analyzed under a four-part test:

> (1) the motion must be timely;
>
> (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and
>
> (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted). Courts apply "practical and equitable considerations" and construe the Rule "broadly in favor of proposed intervenors." *Id.* (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). The "'interest' test" requires no "specific legal or equitable interest[,]" but instead "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). And the burden of showing inadequate representation is "minimal." *SEC v. Navin*, 166 F.R.D. 435, 441 (N.D. Cal. 1995).

The Court also may permit intervention under Federal Rule of Civil Procedure 24(b)(1)(B), when the applicant's "claim or defense…shares with the main action a

common question of law or fact." A court may grant permissive intervention under Rule 24(b)(1)(B) if the application "shows (1) independent grounds from jurisdiction, (2) the motion is timely, and (3) the applicant's claim or defense, and the main action, have a question of law or question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).

Further, Rule 24(b)(1)(3) requires the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Whatever the basis, "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding which is anticipated or already underway that involved common questions of law or fact." *Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996) (quoting *SEC v. Mersky*, No. Civ. A. 93-5200, 1994 WL 22305, at *1 (E.D. Pa. Jan. 25, 1994)); *see also SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). Courts have allowed the United States "to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case." *SEC v. Giguiere*, 18-CV-1530-WQH-JLB, 2018 WL 9516058, at *2 (S.D. Cal. Oct. 24, 2018).

### 2. Intervention as of Right Is Justified Under Rule 24(a)(2)

Both provisions of Rule 24 support intervention in this case. Under Rule 24(a)(2), first, this motion is timely: the United States is seeking to intervene at an early stage in this case, which still is at the pleading stage and before the parties have engaged in discovery. *See Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 162 F. Supp. 3d 1053 (C.D. Cal. 2014) (granting United States' motion to intervene as of right); *SEC v. Sripetch et al.*, No. 20-CV-1864-H-AGS, 2021 WL 165012, at *3 (S.D. Cal. Jan. 19, 2021) (granting motion to intervene under Rule 24(b)(1)(B), and to stay SEC case, and noting that "the motion is timely because the civil action is still in the pleading stage with the parties having engaged in little, if any, discovery, and a trial schedule has not yet been set"). Second, the United States does, by this motion, claim an interest relating to civil discovery in the SEC Case. In particular, the United States' interests include the need to

6

prevent premature exposure of sensitive investigative information through the civil discovery process—an interest that the United States is uniquely positioned to protect. Moreover, discovery in the Criminal Case does and will involve information about investors—Bhakta's victims—among other things, and discovery in that case is subject to a protective order. Criminal Case, ECF No. 11. The United States is best positioned to protect this information, which may not be subject to the same protections, and may be subject to premature disclosure, in the SEC Case. For the same reasons, disposition of the SEC Case (without a stay pending the Criminal Case) will, "as a practical matter," impair the United States' ability to protect its interest, and the parties to the SEC Case are unable to adequately represent this interest. *Navin*, 166 F.R.D. at 440, 441 (granting SEC's motion to intervene); *see also Agua Caliente Band of Cahuilla Indians*, 162 F. Supp. 3d at 1056 (granting United States' motion to intervene because it had satisfied the requirements for intervention and no party opposed the motion).

### 3.     Permissive Intervention is Warranted Under Rule 24(b)(1)(B)

Permissive intervention under Rule 24(b)(1)(B) also is appropriate. First, no independent jurisdictional grounds are required because the United States is not seeking to litigate any claim in this case on the merits, but is seeking intervention for the limited purpose of moving for a stay pending resolution in the Criminal Case. *See Beckman Indus., Inc. v Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *Sripetch et al.*, 2021 WL 165012, at *3. Second, as set forth above, the motion here is timely. Third, the SEC Case and Criminal Case involve common questions of law and fact. Bhakta is a defendant here and the defendant in the Criminal Case. Bhakta's fraudulent scheme, and his material misstatement and omissions, in connection with Fusion Hotel Management LLC and Fusion Hospitality Corporation are at the core of both cases. *See supra* at pages 3-4. And both the SEC's complaint and the indictment allege securities fraud. *Id.* The cases thus substantially overlap and involve common questions. *See Sripetch et al.*, 2021 WL 165012, at *3.

Finally, intervention will cause no undue delay or prejudice to the parties in the SEC Case. *See* Fed. R. Civ. P. 24(a)(3). Rather, as discussed below, the SEC and the United States would be prejudiced without intervention and a stay here.

Accordingly, this Court should grant the United States' motion to intervene.

### B.   This Court Should Stay the SEC Case in the Interests of Justice

#### 1.   Legal Standard

This Court has the inherent power to stay any action when "the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)); *see Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The determination whether to stay a civil proceeding turns on context, and should be reached "in light of the particular circumstances and competing interests" implicated by a given case. *Keating*, 45 F.3d at 324 (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). The Court should consider the extent to which the defendant's Fifth Amendment rights are implicated, *id.*, and the following factors:

> (1) The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
>
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
>
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;
>
> (4) the interests of persons or entities not parties to the civil litigation; and
>
> (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 325. These factors weigh strongly in favor of a stay.

//

## 2. The Parties' Interests Support a Stay of the SEC Case

First, civil discovery would burden both the SEC and the defendants in the SEC Case. For example, the SEC's discovery demands would force Bhakta into a Hobson's choice. Bhakta could invoke his rights under the Fifth Amendment but would suffer potentially severe consequences: a negative inference, which can and often does attach to silence in civil proceedings. *See, e.g., SEC v. Colello*, 139 F.3d 674, 677-78 (9th Cir. 1998) (affirming summary judgment in civil case based largely on defendant's invocation of his Fifth Amendment rights, even when result "may seem harsh" (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *United States v. Solano–Godines*, 120 F.3d 957, 962 (9th Cir. 1997)); *SEC v. Premier Holding Corp.*, No. 21-55249, 2022 WL541194 (9th Cir. Feb. 23, 2022) (affirming preclusion order against defendant who invoked Fifth Amendment). To avoid an adverse inference in the civil case, Defendants would have to answer questions about precisely the same conduct for which they stand criminally charged—a result that runs up against their Fifth Amendment rights against self-incrimination. Not staying the SEC Case would create substantial prejudice to Defendants.

The SEC would suffer significant prejudice, too. This is because defendants could take advantage of the discovery tools available under the Federal Rules of Civil Procedure, including third party subpoenas, documents requests, depositions (including expert depositions), and interrogatories. At the same time, Defendants (Bhakta in particular) will almost undoubtedly resist the SEC's discovery demands by, among other things, asserting Fifth Amendment rights. They could therefore pursue a full range of civil discovery but refrain from providing relevant and even critical information and materials to the SEC. Discovery thus would fail to further the litigation in any real sense: one side (Defendants) could further their fact-finding interests, while the other side (the SEC) is left in the dark. *See Giguiere*, 2018 WL 9516048, at *3 ("The claims of Fifth Amendment rights made by parties and witnesses in this civil case will render civil discovery complicated, costly, and one-sided.").

/ /

### 3. A Stay Promotes the Efficient use of Judicial Resources

There is no realistic possibility that the SEC Case meaningfully proceeds through civil discovery before the conclusion of the Criminal Case. During civil discovery, Bhakta likely will be asked by the SEC about his conduct regarding Fusion Hotel Management LLC and Fusion Hospitality Corporation and his alleged fraudulent scheme in soliciting investments in those entities. However, if history and experience are any indication, Bhakta likely will assert his Fifth Amendment rights. Without information from him, the individual with the most knowledge about the charged scheme—information that is critical to the SEC Case—there is little point in allowing the SEC Case to go forward. *See id.*

Moreover, the lack of a stay will require the Court's attention. The Court has already ordered or will likely soon order, among other things: (1) the submission of early neutral evaluation statements; (2) an early neutral evaluation conference; (3) a case management conference, if no resolution is reached; (4) the submission of a joint discovery plan; (5) the submission of proposed civil protective orders; and (6) the completion of fact and expert discovery. *See, e.g.,* ECF No. 25 (noting an early neutral evaluation conference was held on February 21, 2023 and setting a settlement conference and a case management conference for April 24, 2023). Presiding over these events would likely require substantial judicial resources, and disputes may well involve the Magistrate Judge and/or the District Court. In summary, "[c]ivil discovery will . . . require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending depositions, and by the Court in resolving the myriad of disputes that are likely to arise." *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008). All the while, and despite such judicial efforts, the litigants will simply be waiting for the culmination of the criminal proceedings before they fully attend to the critical aspects of the SEC Case.

On the other hand, criminal cases can and often do progress all the way through conviction or acquittal without statements by defendants. And after conviction or acquittal, it is virtually unheard of for a civil trial to take place in a parallel SEC case. For example,

there were no follow-on civil trials in the criminal and SEC cases brought in this District in connection with Peregrine System, Inc.'s accounting fraud. There, ten individual civil defendants were named in the SEC case. *See SEC v. Gardner, et al.*, No. 04-CV-2002-JAH (S.D. Cal.). All of those defendants, as well as additional defendants, were criminally charged. *See U.S. v. Gardner, et al.*, No. 04-CR-2605-W (S.D. Cal.). The SEC case was stayed prior to discovery, and the criminal case proceeded to trial. *Id.*; Case No. 04-CV-2002-JAH, ECF No. 43. Seven of the civil defendants eventually pleaded guilty in the criminal case, two had their charges dismissed after hung juries, and the remaining defendant pleaded guilty to reduced charges. Despite these varied results, there was no civil trial as to any of the defendants in the SEC case. Instead, the parties to the SEC case resolved their cases, having sized up the evidence and witnesses in the criminal trials. Indeed, the quick resolution of SEC proceedings after (or even before) a criminal trial is the norm, mostly because a criminal conviction usually results in collateral estoppel, and an acquittal (or hung jury) forces the SEC to rethink its settlement position. *E.g., Nicholas*, 569 F. Supp. 2d at 1070 ("[C]ollateral estoppel in the criminal case may expedite the resolution of the civil case."); *SEC v. Offill*, No. 07-CV-1643-D, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008) ("Due to differences in the standards of proof between civil and criminal prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues." (citations omitted)). Further, in the unlikely event a trial occurs in this case, the parties could prepare for trial and try the SEC Case in relatively short order after the criminal proceedings terminate. *See Trs. of Plummers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ("resolution of the Criminal Case may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action").

In sum, staying the SEC Case would allow the Courts here to focus on the Criminal Case, and after it terminates, the SEC Case can proceed or (as often happens) be resolved without the expenditure of significant judicial resources.

### 4. A Stay Will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent Bhakta from taking unfair advantage of broad civil discovery rules in the SEC Case, and thereby avoid the restrictions that would otherwise pertain to him as defendant in the Criminal Case. The likelihood of Bhakta's invoking Fifth Amendment rights would make civil discovery "largely one-sided" because "the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from [d]efendants." *Nicholas*, 569 F. Supp. 2d at 1070; *see also Campbell v. Eastland*, 307 F.2d 478, 488 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The Court of Appeals for the Second Circuit, informed by its long history of presiding over parallel SEC and criminal cases, has also recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). The vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. *See, e.g., Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 10 (D. Conn. 2002) ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to

circumvent limitations on discovery in criminal cases."); *Philip Morris Inc. v. Heinrich*, No. 95 Civ. 0328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, defendants "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules").

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. *See, e.g.*, Fed. R. Crim. P. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a). Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. The criminal discovery rules "are purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment." *Nicholas*, 569 F. Supp. 2d at 1071–72 (citing *Campbell*, 307 F.2d at 487 n.12); *see also Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 381 (D.D.C. 1977).

These concerns apply here. Defendants' ability to take depositions, serve interrogatories, and issue third party subpoenas, for example, would undoubtedly provide Bhakta with information not otherwise discoverable in the Criminal Case, thus enhancing his ability to manufacture evidence or tailor testimony—and otherwise seriously hampering the United States' ability to conduct an orderly investigation and prosecution.

Because the United States will suffer irreparable prejudice if Defendants are permitted to obtain broad civil discovery prior to the conclusion of the criminal proceeding, the requested stay should be granted.

### 5. The Interests of the Public in the Pending Cases Support a Stay

Advancing the Criminal Case should take precedence over the SEC Case, which seeks injunctive relief, professional bars, and disgorgement and penalties, primarily because the Criminal Case implicates the defendants' liberty interests. *Nicholas*, 569 F.

Supp. 2d at 1073; *see Kordel*, 397 U.S. at 12 n.27 ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"); *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 532 (S.D. W. Va. 2005); (interest in litigating civil case "pales in comparison to the public interest as a whole in unraveling the criminal…scheme and punishing those responsible for that scheme."); *Bureerong*, 167 F.R.D. at 87 ("the interests of the Government in protecting its criminal investigation are clearly the paramount concern here"); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) (stating that the "public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant"); *Giguiere*, 2018 WL 9516048, at *3 ("The public interest in protecting the integrity of the criminal actions and advancing the speedy resolution of the criminal actions weighs in favor of staying this civil action.").

A stay is especially appropriate here because, as set forth above, there is an indictment filed against Bhakta, one of three defendants in this case and who is alleged to have been the sole manager of the remaining two defendants, for engaging in the same activities (and based on the same conduct) that are the subject of the complaint in this case. The prosecution in the Criminal Case will therefore vindicate substantially the same public interest that underlies the SEC's civil action—preventing securities fraud.

## IV. CONCLUSION

For the foregoing reasons, the United States requests that this Court grants its motions to intervene in and to stay this SEC Case pending resolution in the pending Criminal Case, *United States v. Denny Bhakta*, No. 21-CR-3352-JLS.

DATED: March 7, 2023

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Eric R. Olah*
ERIC R. OLAH
Assistant United States Attorney